# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

**E. VALERIE SMITH,**

     **Plaintiff,**

**vs.**                                **Case No. _____**

**FLORIDA GULF COAST UNIVERSITY**
**BOARD OF TRUSTEES,**

     **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, E. VALERIE SMITH (hereinafter "Plaintiff" or "Smith"), by and through her undersigned attorneys, hereby sues Defendant, FLORIDA GULF COAST UNIVERSITY BOARD OF TRUSTEES (hereinafter "Defendant" or "FGCU"), and alleges as follows:

### Nature of Action

1.     This is an action for unlawful employment practices including race, national origin, gender and age discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended ("Title VII") and the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes, as amended ("FCRA").

2.     Smith seeks injunctive and declaratory relief; reinstatement to employment, or in the alternative front pay; lost wages and benefits; compensatory damages; attorneys' fees and costs and other litigation expenses; and all other relief this Court deems just and proper.

### Parties, Jurisdiction and Venue

3.     This Court has jurisdiction over this action pursuant to the United States Constitution, Art. III, §2, Cl. 1; 28 U.S.C. §§1331, 1343, 2201 & 2202.

4.     This Court has supplemental jurisdiction over Smith's FCRA claims pursuant to 28 U.S.C. §1367.

5.     Plaintiff is a citizen of the United States and a resident of Lee County, Florida.

6.     FGCU is a state university as defined by Florida Statute §1000.21(6) and is doing business in Lee County, Florida.

7.     Venue in the Ft. Myers Division of the Middle District of Florida is proper as the unlawful employment practices described herein occurred in Lee County, Florida; Smith is a resident of Lee County, Florida, and was employed by FGCU in Lee County, Florida. 28 U.S.C. §1391; Middle District Local Rule 1.02(b)(5).

### Factual Allegations Common To All Counts

8.     Smith is an African-American female born in the United States.

9.     Smith was born in 1947.

10.     For purposes of Title VII and the FCRA, Smith was employed by FGCU at all material times herein.

11.     Smith was a founding faculty member of FGCU and began working as a professor for FGCU in September 1996.

12.     At the time of her hire at FGCU, Smith had over 20 years of teaching experience.

13.     Smith was qualified for her position as a Sociology Professor and for all times relevant herein was on a Continuing Multi-Year Appointment ("CMYA").

14.     A CMYA is a three-year employment contract with automatic renewal contingent upon the faculty member meeting certain performance criteria.

15.     At all relevant times herein, Smith was the only U.S. born African-American, female faculty member and one of only two fully ranked U.S. born African-American faculty members to have worked in the College of Arts and Sciences in the history of FGCU, which was more than 17 years.

16.     Upon information and belief, Smith was one of the oldest, if not the oldest, faculty members in the College of Arts and Sciences.

17.     The College of Arts and Sciences includes the Department of Social and Behavioral Sciences.

18.     Smith worked in the Department of Social and Behavioral Sciences (the "Department").

19.     In or around 2005, Eric Strahorn (Male, U.S. born Caucasian, late 30s/early 40s) ("Strahorn"), became the Chair of the Department and was Smith's supervisor.

20.     Strahorn was a lower-ranked and less-senior professor with FGCU than Smith.

21.     Prior to Strahorn becoming the Department Chair, Smith consistently received excellent performance evaluations.

22.     Once Strahorn became the Department Chair, Smith began to notice a change in the treatment toward her when, including, but not limited to, the following occurred:

    a.     FGCU cancelled Smith's upper-level courses requiring Smith to teach lower-level courses, while less senior faculty and adjunct professors were given upper-level courses to teach.

    b.     The Department Chair repeatedly sat in on Smith's online course and closely monitored other courses she taught in an attempt to intimidate her and create a basis to issue negative evaluations to her.

    c.     Management evaluated Smith on criteria in a way that was not consistent with FGCU and College of Arts and Sciences policies, as well as in the manner which was not applied to other faculty members.

    d.     Courses traditionally taught by Smith were given to younger and/or Caucasian and/or foreign born and/or male faculty without any consultation with or notification to Smith.

    e.     FGCU undermined Smith and the value of her grades given to students by supporting an unwarranted grade change and encouraging the students to challenge the grades they received.

23.    For academic year 2006-2007, Strahorn issued to Smith a "Does Not Meet Expectations" performance evaluation, which is the first time Smith received this rating on an evaluation. As the basis for the negative evaluation, Strahorn claimed that Smith failed to meet certain criteria, which were administrative in nature and not germane to the criteria established by FGCU or the College of Arts and Sciences for evaluating full professors.

24.    Smith appealed the evaluation and it was eventually changed after an appeal to then Provost Bonnie Yegidis to reflect a rating of "Meets Expectations."

25.     On April 30, 2008, Strahorn issued another unsatisfactory evaluation to Smith for the 2007-2008 academic year. Strahorn again based Smith's evaluation on menial administrative matters not germane to the criteria for the evaluation of faculty performance.

26.     FGCU's *Faculty Performance Evaluation Document* ("FPED") and the College of Arts and Sciences' *Performance Evaluation Criteria and Process* ("PECAP") governed the evaluation process for CMYA faculty, including Smith, and provided the criteria for evaluating the performance of faculty members to be teaching, scholarship and service.

27.     As a result of the discriminatory evaluation, pursuant to FGCU College of Arts and Sciences' PECAP, Smith was placed on probation subject to a Performance Improvement Contract ("PIC") for the 2008-2009 academic year and denied a raise.

28.     Following the unsatisfactory rating, for the 2008-2009 academic year, FGCU moved Smith from the office she occupied for over 11 years to a trailer isolated away from her colleagues of equal rank and quite a distance from the main part of campus, leaving her office vacant for months.

29.     Significantly, Smith was the only full professor working out of a trailer.

30.     There was no legitimate business reason for moving Smith to the trailer, and Smith believes FGCU did so to further discriminate against her.

31.     In Fall 2008, Smith contacted FGCU's Ombudsman and EEO liaison, Charles McKinney, about the unsatisfactory evaluation and complained about, objected to and opposed race discrimination and harassment.

32.     Pursuant to Article 15.1 of the 2007-2010 collective bargaining agreement between FGCU and the United Faculty of Florida, if CMYA faculty members on probation and subject to a PIC satisfactorily met the expectations and requirements of the PIC, then the supervisor was required to recommend to the appropriate administrator that the faculty member's probation be lifted and a two-year contract extension granted, restoring the faculty member to a full three-year continuing contract cycle.

33.     In February 2009, Smith sent a memorandum to Dr. Richard Toll (Male, U.S. born Caucasian, 50s) ("Toll"), FGCU's Provost and Vice President of Academic Affairs ("VPAA"), complaining about the unsatisfactory evaluation rating she received for the 2007-2008 academic year and complaining about, objecting to and opposing harassment.

34.     In February 2009, Smith also complained verbally and in writing to FGCU's President, Wilson G. Bradshaw ("Bradshaw"), regarding the unsatisfactory evaluation rating she received for the 2007-2008 academic year and complained about, objected to and opposed discrimination and harassment.

35.     Consistent with Article 15.1 of the collective bargaining agreement, the PECAP and the FPED, the new Department Chair, Joseph Cudjoe (Male, foreign-born Ghanaian, 30s) ("Cudjoe"), recommended to the Peer Review Committee ("PRC") that Smith's probationary status be removed and Smith be returned to a CMYA.

36.     On April 20, 2009, the PRC sent a letter to the Dean of the College of Arts and Sciences, Donna Price Henry (Female, U.S. born Caucasian, mid to late 50s) ("Henry"), finding that Smith satisfactorily completed the PIC and recommending reinstatement of Smith's CMYA contract.

37.     Once the PRC provided its recommendation to Henry, pursuant to the PECAP and/or FPED, Henry was supposed to submit a report to VPAA Toll justifying the decision of the PRC.

38.     If Henry disagreed with the PRC's recommendation, then Henry was required to submit a dissenting report to the VPAA.

39.     If Henry submitted a dissenting report, the final decision on Smith's renewal or non-renewal rested with the VPAA.

40.     However, Henry did not properly follow the FGCU's professor evaluation policies.

41.     On May 6, 2009, Henry provided Smith with a letter denying reinstatement to her CMYA contract, claiming that her performance was unsatisfactory and indicating that her contract would be non-renewed.  Smith's employment was to cease as of September 8, 2010.

42.     At that time, Henry did not submit a dissenting report as required by FGCU's professor evaluation policies.  It was not until May 22, 2009, over two weeks *after* Henry made the decision not to renew Smith's contract, that Henry submitted a report for consideration by the VPAA regarding Smith's non-renewal

43.     Significantly, Smith received no prior warnings from FGCU, Henry or any other supervisor to suggest that her performance for the 2008-2009 academic year was deficient in any way or that she was performing unsatisfactorily.

44.     Further, contrary to the PECAP and/or FPED procedures, Henry based her decision to non-renew Smith's contract on criteria that were not part of Smith's PIC or fell outside of the evaluation period.

45.     On May 12, 2009, Smith timely filed a grievance regarding the 2007-2008 evaluation which was denied on August 28, 2009.

46.     On August 7, 2009, Smith complained about, objected to and/or opposed discrimination as a result of the unsatisfactory evaluations and contract non-renewal.

47.     On September 4, 2009, a month following her complaints about discrimination, Toll sent a memo to Smith stating that her performance for the 2008-2009 academic year was unsatisfactory, that she would continue on probation through the 2009-2010 academic year and her contract would not be renewed for the 2010-2011 academic year.

48.     On October 20, 2009, Smith timely filed Step Two of her grievance, which was denied on November 18, 2009.

49.     Smith subsequently filed a Notice of Intent to Arbitrate  which was denied by the Arbitrator on April 26, 2010.

50.     On or about September 8, 2010, Smith's employment with FGCU ended.

51.     Smith was 63 years of age at the time of the termination of her employment.

52.     FGCU treated Smith less favorably and subjected her to different terms and conditions of employment than other similarly situated younger and/or Caucasian and/or foreign born and/or male faculty under the same or substantially the same circumstances.

53.     The actions taken by FGCU against Smith are inconsistent with and more severe than the actions taken against younger and/or Caucasian and/or foreign born and/or male faculty under the same or similar and/or more egregious circumstances.

54.     Smith received the negative performance evaluation, was placed on probation and a performance improvement contract, and was ultimately terminated because of her race, national origin, gender and/or age in violation of federal and state laws.

55.     FGCU had no legitimate business reason for subjecting Smith to adverse action.

56.     Throughout Smith's employment with FGCU, the demographics of the College of Arts and Sciences are further indicia of FGCU's discriminatory animus toward African-American individuals.

57.     Further, FGCU has exhibited a pattern or practice of engaging in illegal employment discrimination.

58.     As a result of the foregoing actions, Smith suffered lost wages and benefits, loss of enjoyment of life, loss of dignity, emotional distress, loss of her professional reputation and other intangible injuries.

59.     The actions alleged above have caused, and continue to cause, irreparable harm to Smith, for which there is no full, complete or adequate remedy at law.

60.     Additionally, Smith has incurred and is incurring costs, expenses and reasonable attorneys' fees as a result of FGCU's actions which she is entitled to recover from FGCU if she prevails in this action pursuant to 42 U.S.C. §2000e-5(k) and Florida Statute §760.11 (2009).

## COUNT I
### (Race Discrimination in Violation of Title VII)

61.     Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 60 of this Complaint as if set forth completely herein.

62.     Plaintiff has met all conditions precedent to and has exhausted all administrative remedies prior to the institution of this action including:

a.     Filing a verified *Charge of Discrimination* with the United States Equal Employment Opportunity Commission ("EEOC") on or about June 30, 2010, i.e., within the requisite 300 days of the adverse employment action complained of by Plaintiff; and

b.     Receiving a *Dismissal and Notice of Rights* from the EEOC within 90 days of filing this action, which the EEOC issued on or about October 31, 2013.

63.     Plaintiff was an employee of FGCU and is an aggrieved person within the meaning of Title VII.

64.     FGCU is an employer within the meaning of Title VII.

65.     Plaintiff is a member of a protected class in that she is African-American.

66.     Plaintiff was qualified for the position she held with FGCU.

67.     Plaintiff suffered an adverse action when FGCU, among other adverse actions:

a.     Issued to Smith a negative performance rating resulting in a denial of a raise;

b.     Placed Smith on probation and a performance improvement contract; and

c.     Non-renewed Smith's CMYA resulting in the termination of her employment.

68.     The real reason FGCU took the foregoing actions against Plaintiff was because of her race, which constitutes illegal race discrimination.

69.     As such, Plaintiff was subjected to disparate treatment based upon her race, which negatively affected the terms, conditions and privileges of Plaintiff's employment in violation of Title VII.

70.     As a result of the foregoing actions, Plaintiff suffered lost wages and benefits, loss of enjoyment of life, loss of dignity, emotional distress, loss of her professional reputation and other intangible injuries, and she will continue to suffer these damages in the future.

71.     In addition, as a result of the foregoing actions, Plaintiff retained the undersigned law firm to which she is obligated to pay reasonable attorneys' fees, costs and expenses.

72.     Plaintiff is entitled to recover her attorneys' fees, costs and other litigation expenses from FGCU if she prevails in this action pursuant to Title VII.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Declare the actions of FGCU to be illegal race discrimination in violation of Title VII;

B.     Award Plaintiff her lost wages and benefits including interest thereon;

C.     Reinstate Plaintiff with all benefits as if she had continued her employment without interruption, including reinstating all seniority rights, making retroactive contributions to her retirement account(s), and providing all other benefits to which Plaintiff would have been entitled had she not been

discriminated against, or in the alternative, awarding Plaintiff front pay and the value of said benefits in lieu of a reinstatement;

D.      Permanently enjoin FGCU from future violations of Title VII and require FGCU to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that FGCU employees are not subject to discrimination;

E.      Award Plaintiff compensatory damages;

F.      Award Plaintiff the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to Title VII; and

G.      Award Plaintiff such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted.

## COUNT II
### (National Origin Discrimination in Violation of Title VII)

73.     Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 60 of this Complaint as if set forth completely herein.

74.     Plaintiff has met all conditions precedent and has exhausted all administrative remedies prior to the institution of this action including:

a.      Filing a verified *Charge of Discrimination* with the EEOC on or about June 30, 2010, i.e., within the requisite 300 days of the adverse employment action complained of by Plaintiff; and

b.      Receiving a *Dismissal and Notice of Rights* from the EEOC within 90 days of filing this action, which the EEOC issued on or about October 31, 2013.

75.     Plaintiff's national origin discrimination claim is encompassed in Plaintiff's EEOC *Charge of Discrimination*, is like or related to the allegations contained in said charge and/or grew out of such allegations during the pendency of the case before the EEOC.

76.     Plaintiff was an employee of FGCU and is an aggrieved person within the meaning of Title VII.

77.     FGCU is an employer within the meaning of Title VII.

78.     Plaintiff is a member of a protected class in that she is U.S. born.

79.     Plaintiff was qualified for the position she held with FGCU.

80.     Plaintiff suffered an adverse action when FGCU, among other adverse actions:

    a.     Issued to Smith a negative performance rating resulting in a denial of a raise;

    b.     Placed Smith on probation and a performance improvement contract; and

    c.     Non-renewed Smith's CMYA resulting in the termination of her employment.

81.     The real reason FGCU took the foregoing actions against Plaintiff was because of her national origin, which constitutes illegal national origin discrimination.

82.     As such, Plaintiff was subjected to disparate treatment based upon her national origin, which negatively affected the terms, conditions and privileges of Plaintiff's employment in violation of Title VII.

83.   As a result of the foregoing actions, Plaintiff suffered lost wages and benefits, loss of enjoyment of life, loss of dignity, emotional distress, loss of her professional reputation and other intangible injuries, and she will continue to suffer these damages in the future.

84.   In addition, as a result of the foregoing actions, Plaintiff retained the undersigned law firm to which she is obligated to pay reasonable attorneys' fees, costs and expenses.

85.   Plaintiff is entitled to recover her attorneys' fees, costs and other litigation expenses from FGCU if she prevails in this action pursuant to Title VII.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.   Declare the actions of FGCU to be illegal national origin discrimination in violation of Title VII;

B.   Award Plaintiff her lost wages and benefits including interest thereon;

C.   Reinstate Plaintiff with all benefits as if she had continued her employment without interruption, including reinstating all seniority rights, making retroactive contributions to her retirement account(s), and providing all other benefits to which Plaintiff would have been entitled had she not been discriminated against, or in the alternative, awarding Plaintiff front pay and the value of said benefits in lieu of a reinstatement;

D.   Permanently enjoin FGCU from future violations of Title VII and require FGCU to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that FGCU employees are not subject to discrimination;

E.     Award Plaintiff compensatory damages;

F.     Award Plaintiff the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to Title VII; and

G.     Award Plaintiff such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted.

### COUNT III
### (Gender Discrimination in Violation of Title VII)

86.     Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 60 of this Complaint as if set forth completely herein.

87.     Plaintiff has met all conditions precedent and has exhausted all administrative remedies prior to the institution of this action including:

a.     Filing a verified *Charge of Discrimination* with the EEOC on or about June 30, 2010, i.e., within the requisite 300 days of the adverse employment action complained of by Plaintiff; and

b.     Receiving a *Dismissal and Notice of Rights* from the EEOC within 90 days of filing this action, which the EEOC issued on or about October 31, 2013.

88.     Plaintiff was an employee of FGCU and is an aggrieved person within the meaning of Title VII.

89.     FGCU is an employer within the meaning of Title VII.

90.     Plaintiff is a member of a protected class in that she is female.

91.     Plaintiff was qualified for the position she held with FGCU.

92.     Plaintiff suffered an adverse action when FGCU, among other adverse actions:

a. Issued to Smith a negative performance rating resulting in a denial of a raise;

b. Placed Smith on probation and a performance improvement contract; and

c. Non-renewed Smith's CMYA resulting in the termination of her employment.

93. The real reason FGCU took the foregoing actions against Plaintiff was because of her gender, which constitutes illegal gender discrimination.

94. As such, Plaintiff was subjected to disparate treatment based upon her gender, which negatively affected the terms, conditions and privileges of Plaintiff's employment in violation of Title VII.

95. As a result of the foregoing actions, Plaintiff suffered lost wages and benefits, loss of enjoyment of life, loss of dignity, emotional distress, loss of her professional reputation and other intangible injuries, and she will continue to suffer these damages in the future.

96. In addition, as a result of the foregoing actions, Plaintiff retained the undersigned law firm to which she is obligated to pay reasonable attorneys' fees, costs and expenses.

97. Plaintiff is entitled to recover her attorneys' fees, costs and other litigation expenses from FGCU if she prevails in this action pursuant to Title VII.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.   Declare the actions of FGCU to be illegal gender discrimination in violation of Title VII;

B.   Award Plaintiff her lost wages and benefits including interest thereon;

C.   Reinstate Plaintiff with all benefits as if she had continued her employment without interruption, including reinstating all seniority rights, making retroactive contributions to her retirement account(s), and providing all other benefits to which Plaintiff would have been entitled had she not been discriminated against, or in the alternative, awarding Plaintiff front pay and the value of said benefits in lieu of a reinstatement;

D.   Permanently enjoin FGCU from future violations of Title VII and require FGCU to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that FGCU employees are not subject to discrimination;

E.   Award Plaintiff compensatory damages;

F.   Award Plaintiff the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to Title VII; and

G.   Award Plaintiff such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted.

## COUNT IV
### (Race Discrimination in Violation of the FCRA)

98.   Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 60 of this Complaint as if set forth completely herein.

99.   Plaintiff has met all conditions precedent and has exhausted all administrative remedies prior to the institution of this action including:

a.   Filing a verified *Charge of Discrimination* with the Florida Commission on Human Relations ("FCHR") via dual-filing same through the EEOC on or about June 30, 2010, i.e., within the requisite 365 days of the adverse employment action complained of by Plaintiff; and

b.   Waiting more than 180 days from the time she filed her *Charge of Discrimination* without the FCHR issuing a determination on the charge.

100.   Plaintiff was an employee of FGCU and is an aggrieved person within the meaning of the FCRA.

101.   FGCU is an employer within the meaning of the FCRA.

102.   Plaintiff is a member of a protected class in that she is African-American.

103.   Plaintiff was qualified for the position she held with FGCU.

104.   Plaintiff suffered an adverse action when FGCU, among other adverse actions:

a.   Issued to Smith a negative performance rating resulting in a denial of a raise;

b.   Placed Smith on probation and a performance improvement contract; and

c.   Non-renewed Smith's CMYA resulting in the termination of her employment.

105.   The real reason FGCU took the foregoing actions against Plaintiff was because of her race, which constitutes illegal race discrimination.

106. As such, Plaintiff was subjected to disparate treatment based upon her race, which negatively affected the terms, conditions and privileges of Plaintiff's employment in violation of the FCRA.

107. As a result of the foregoing actions, Plaintiff suffered lost wages and benefits, loss of enjoyment of life, loss of dignity, emotional distress, loss of her professional reputation and other intangible injuries, and she will continue to suffer these damages in the future.

108. In addition, as a result of the foregoing actions, Plaintiff retained the undersigned law firm to which she is obligated to pay reasonable attorneys' fees, costs and expenses.

109. Plaintiff is entitled to recover her attorneys' fees, costs and other litigation expenses from FGCU if she prevails in this action pursuant to the FCRA.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare the actions of FGCU to be illegal race discrimination in violation of the FCRA;

B. Award Plaintiff her lost wages and benefits including interest thereon;

C. Reinstate Plaintiff with all benefits as if she had continued her employment without interruption, including reinstating all seniority rights, making retroactive contributions to her retirement account(s), and providing all other benefits to which Plaintiff would have been entitled had she not been discriminated against, or in the alternative, awarding Plaintiff front pay and the value of said benefits in lieu of a reinstatement;

D.    Permanently enjoin FGCU from future violations of the FCRA and require FGCU to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that FGCU employees are not subject to discrimination;

E.    Award Plaintiff compensatory damages;

F.    Award Plaintiff the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to the FCRA; and

G.    Award Plaintiff such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted.

## COUNT V
### (National Origin Discrimination in Violation of the FCRA)

110.    Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 60 of this Complaint as if set forth completely herein.

111.    Plaintiff has met all conditions precedent and has exhausted all administrative remedies prior to the institution of this action including:

a.    Filing a verified *Charge of Discrimination* with the FCHR via dual-filing same through the EEOC on or about June 30, 2010, i.e., within the requisite 365 days of the adverse employment action complained of by Plaintiff; and

b.    Waiting more than 180 days from the time she filed her *Charge of Discrimination* without the FCHR issuing a determination on the charge.

112.    Plaintiff's national origin discrimination claim is encompassed in Plaintiff's EEOC *Charge of Discrimination*, is like or related to the allegations contained in said charge and/or grew out of such allegations during the pendency of the case before the EEOC.

113.    Plaintiff was an employee of FGCU and is an aggrieved person within the meaning of the FCRA.

114.    FGCU is an employer within the meaning of the FCRA.

115.    Plaintiff is a member of a protected class in that she is U.S. born.

116.    Plaintiff was qualified for the position she held with FGCU.

117.    Plaintiff suffered an adverse action when FGCU, among other adverse actions:

      a.    Issued to Smith a negative performance rating resulting in a denial of a raise;

      b.    Placed Smith on probation and a performance improvement contract; and

      c.    Non-renewed Smith's CMYA resulting in the termination of her employment.

118.    The real reason FGCU took the foregoing actions against Plaintiff was because of her national origin, which constitutes illegal national origin discrimination.

119.    As such, Plaintiff was subjected to disparate treatment based upon her national origin, which negatively affected the terms, conditions and privileges of Plaintiff's employment in violation of the FCRA.

120.    As a result of the foregoing actions, Plaintiff suffered lost wages and benefits, loss of enjoyment of life, loss of dignity, emotional distress, loss of her professional reputation and other intangible injuries, and she will continue to suffer these damages in the future.

121.    In addition, as a result of the foregoing actions, Plaintiff retained the undersigned law firm to which she is obligated to pay reasonable attorneys' fees, costs and expenses.

122.    Plaintiff is entitled to recover her attorneys' fees, costs and other litigation expenses from FGCU if she prevails in this action pursuant to the FCRA.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Declare the actions of FGCU to be illegal national origin discrimination in violation of the FCRA;

B.    Award Plaintiff her lost wages and benefits including interest thereon;

C.    Reinstate Plaintiff with all benefits as if she had continued her employment without interruption, including reinstating all seniority rights, making retroactive contributions to her retirement account(s), and providing all other benefits to which Plaintiff would have been entitled had she not been discriminated against, or in the alternative, awarding Plaintiff front pay and the value of said benefits in lieu of a reinstatement;

D.    Permanently enjoin FGCU from future violations of the FCRA and require FGCU to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that FGCU employees are not subject to discrimination;

E.    Award Plaintiff compensatory damages;

F.    Award Plaintiff the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to the FCRA; and

G.   Award Plaintiff such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted.

## COUNT VI
### (Gender Discrimination in Violation of the FCRA)

123.   Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 60 of this Complaint as if set forth completely herein.

124.   Plaintiff has met all conditions precedent and has exhausted all administrative remedies prior to the institution of this action including:

a.   Filing a verified *Charge of Discrimination* with the FCHR via dual-filing same through the EEOC on or about June 30, 2010, i.e., within the requisite 365 days of the adverse employment action complained of by Plaintiff; and

b.   Waiting more than 180 days from the time she filed her *Charge of Discrimination* without the FCHR issuing a determination on the charge.

125.   Plaintiff was an employee of FGCU and is an aggrieved person within the meaning of the FCRA.

126.   FGCU is an employer within the meaning of the FCRA.

127.   Plaintiff is a member of a protected class in that she is female.

128.   Plaintiff was qualified for the position she held with FGCU.

129.   Plaintiff suffered an adverse action when FGCU, among other adverse actions:

a.   Issued to Smith a negative performance rating resulting in a denial of a raise;

       b.     Placed Smith on probation and a performance improvement contract;

and

       c.     Non-renewed Smith's CMYA resulting in the termination of her employment.

130.    The real reason FGCU took the foregoing actions against Plaintiff was because of her gender, which constitutes illegal gender discrimination.

131.    As such, Plaintiff was subjected to disparate treatment based upon her gender, which negatively affected the terms, conditions and privileges of Plaintiff's employment in violation of the FCRA.

132.    As a result of the foregoing actions, Plaintiff suffered lost wages and benefits, loss of enjoyment of life, loss of dignity, emotional distress, loss of her professional reputation and other intangible injuries, and she will continue to suffer these damages in the future.

133.    In addition, as a result of the foregoing actions, Plaintiff retained the undersigned law firm to which she is obligated to pay reasonable attorneys' fees, costs and expenses.

134.    Plaintiff is entitled to recover her attorneys' fees, costs and other litigation expenses from FGCU if she prevails in this action pursuant to the FCRA.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Declare the actions of FGCU to be illegal gender discrimination in violation of the FCRA;

B.    Award Plaintiff her lost wages and benefits including interest thereon;

C.     Reinstate Plaintiff with all benefits as if she had continued her employment without interruption, including reinstating all seniority rights, making retroactive contributions to her retirement account(s), and providing all other benefits to which Plaintiff would have been entitled had she not been discriminated against, or in the alternative, awarding Plaintiff front pay and the value of said benefits in lieu of a reinstatement;

D.     Permanently enjoin FGCU from future violations of the FCRA and require FGCU to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that FGCU employees are not subject to discrimination;

E.     Award Plaintiff compensatory damages;

F.     Award Plaintiff the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to the FCRA; and

G.     Award Plaintiff such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted.

## COUNT VII
### (Age Discrimination in Violation of FCRA)

135.   Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 60 of this Complaint as if set forth completely herein.

136.   Plaintiff has met all conditions precedent and has exhausted all administrative remedies prior to the institution of this action including:

a.     Filing a verified *Charge of Discrimination* with the FCHR via dual-filing same through the EEOC on or about June 30, 2010, i.e., within the requisite 365 days of the adverse employment action complained of by Plaintiff; and

     b.     Waiting more than 180 days from the time she filed her *Charge of Discrimination* without the FCHR issuing a determination on the charge.

137.     Plaintiff was an employee of FGCU and is an aggrieved person within the meaning of the FCRA.

138.     FGCU is an employer within the meaning of the FCRA.

139.     Plaintiff is a member of a protected class in that she is over the age of 60.

140.     Plaintiff was qualified for the position she held with FGCU.

141.     Plaintiff suffered an adverse action when FGCU, among other adverse actions:

     a.     Issued to Smith a negative performance rating resulting in a denial of a raise;

     b.     Placed Smith on probation and a performance improvement contract; and

     c.     Non-renewed Smith's CMYA resulting in the termination of her employment.

142.     The real reason FGCU took the foregoing actions against Plaintiff was because of her age, which constitutes illegal age discrimination.

143.     As such, Plaintiff was subjected to disparate treatment based upon her age, which negatively affected the terms, conditions and privileges of Plaintiff's employment in violation of the FCRA.

144.     As a result of the foregoing actions, Plaintiff suffered lost wages and benefits, loss of enjoyment of life, loss of dignity, emotional distress, loss of her professional

reputation and other intangible injuries, and she will continue to suffer these damages in the future.

145.    In addition, as a result of the foregoing actions, Plaintiff retained the undersigned law firm to which she is obligated to pay reasonable attorneys' fees, costs and expenses.

146.    Plaintiff is entitled to recover her attorneys' fees, costs and other litigation expenses from FGCU if she prevails in this action pursuant to the FCRA.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Declare the actions of FGCU to be illegal age discrimination in violation of the FCRA;

B.    Award Plaintiff her lost wages and benefits including interest thereon;

C.    Reinstate Plaintiff with all benefits as if she had continued her employment without interruption, including reinstating all seniority rights, making retroactive contributions to her retirement account(s), and providing all other benefits to which Plaintiff would have been entitled had she not been discriminated against, or in the alternative, awarding Plaintiff front pay and the value of said benefits in lieu of a reinstatement;

D.    Permanently enjoin FGCU from future violations of the FCRA and require FGCU to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that FGCU employees are not subject to discrimination;

E.    Award Plaintiff compensatory damages;

F.      Award Plaintiff the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to the FCRA; and

G.      Award Plaintiff such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted.

### COUNT VIII
### (Retaliation in Violation of Title VII)

147.    Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 60 of this Complaint as if set forth completely herein.

148.    Plaintiff has met all conditions precedent and has exhausted all administrative remedies prior to the institution of this action including:

a.      Filing a verified *Charge of Discrimination* with the EEOC on or about June 30, 2010, i.e., within the requisite 300 days of the adverse employment action complained of by Plaintiff; and

b.      Receiving a *Dismissal and Notice of Rights* from the EEOC within 90 days of filing this action, which the EEOC issued on or about October 31, 2013.

149.    Plaintiff was an employee of FGCU and is an aggrieved person within the meaning of Title VII.

150.    FGCU is an employer within the meaning of Title VII.

151.    Plaintiff opposed and complained of unlawful race, national origin, gender and/or age discrimination as described above.

152.    Plaintiff suffered an adverse action when FGCU, among other adverse actions, did not renew Smith's CMYA resulting in the termination of her employment.

153.    The actions of FGCU, as fully set forth above, were taken in retaliation for Plaintiff's complaints about, objections to and/or opposition to the discriminatory treatment, and violated Title VII, and negatively affected the terms, conditions and privileges of Plaintiff's employment in violation of Title VII.

154.    The foregoing action is the type that is reasonably likely to dissuade protected activity by Plaintiff and/or other employees, and therefore constitutes retaliation in violation of Title VII.

155.    As a result of the foregoing actions, Plaintiff suffered lost wages and benefits, loss of enjoyment of life, loss of dignity, emotional distress, loss of her professional reputation and other intangible injuries, and she will continue to suffer these damages in the future.

156.    In addition, as a result of the foregoing action, Plaintiff retained the undersigned law firm to which she is obligated to pay reasonable attorneys' fees, costs and expenses.

157.    Plaintiff is entitled to recover her attorneys' fees, costs and other litigation expenses from FGCU if she prevails in this action pursuant to Title VII.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Declare the actions of FGCU to be illegal retaliation in violation of Title VII;

B.    Award Plaintiff her lost wages and benefits including interest thereon;

C.    Reinstate Plaintiff with all benefits as if she had continued her employment without interruption, including reinstating all seniority rights, making retroactive contributions to her retirement account(s), and providing all other

benefits to which Plaintiff would have been entitled had she not been retaliated against, or in the alternative, awarding Plaintiff front pay and the value of said benefits in lieu of a reinstatement;

D.   Permanently enjoin FGCU from future violations of Title VII and require FGCU to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that FGCU employees are not subject to retaliation;

E.   Award Plaintiff compensatory damages;

F.   Award Plaintiff the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to Title VII; and

G.   Award Plaintiff such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted.

## COUNT IX
### (Retaliation in Violation of the FCRA)

158.   Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 60 of this Complaint as if set forth completely herein.

159.   Plaintiff has met all conditions precedent and has exhausted all administrative remedies prior to the institution of this action including:

a.   Filing a verified *Charge of Discrimination* with the FCHR via dual-filing same through the EEOC on or about June 30, 2010, i.e., within the requisite 365 days of the adverse employment action complained of by Plaintiff; and

b.   Waiting more than 180 days from the time she filed her *Charge of Discrimination* without the FCHR issuing a determination on the charge.

160.   Plaintiff was an employee of FGCU and is an aggrieved person within the meaning of the FCRA.

161.   FGCU is an employer within the meaning of the FCRA.

162.   Plaintiff opposed and complained of unlawful race, national origin, gender and/or age discrimination as described above.

163.   Plaintiff suffered an adverse action when FGCU, among other adverse actions, did not renew Smith's CMYA resulting in the termination of her employment.

164.   The actions of FGCU, as fully set forth above, were taken in retaliation for Plaintiff's complaints about, objections to and/or opposition to the discriminatory treatment, and violated the FCRA, and negatively affected the terms, conditions and privileges of Plaintiff's employment in violation of the FCRA.

165.   The foregoing action is the type that is reasonably likely to dissuade protected activity by Plaintiff and/or other employees, and therefore constitutes retaliation in violation of the FCRA.

166.   As a result of the foregoing actions, Plaintiff suffered lost wages and benefits, loss of enjoyment of life, loss of dignity, emotional distress, loss of her professional reputation and other intangible injuries, and she will continue to suffer these damages in the future.

167.   In addition, as a result of the foregoing action, Plaintiff retained the undersigned law firm to which she is obligated to pay reasonable attorneys' fees, costs and expenses.

168.    Plaintiff is entitled to recover her attorneys' fees, costs and other litigation expenses from FGCU if she prevails in this action pursuant to the FCRA.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Declare the actions of FGCU to be illegal retaliation in violation of the FCRA;

B.    Award Plaintiff her lost wages and benefits including interest thereon;

C.    Reinstate Plaintiff with all benefits as if she had continued her employment without interruption, including reinstating all seniority rights, making retroactive contributions to her retirement account(s), and providing all other benefits to which Plaintiff would have been entitled had she not been retaliated against, or in the alternative, awarding Plaintiff front pay and the value of said benefits in lieu of a reinstatement;

D.    Permanently enjoin FGCU from future violations of the FCRA and require FGCU to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that FGCU employees are not subject to retaliation;

E.    Award Plaintiff compensatory damages;

F.    Award Plaintiff the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to the FCRA; and

G.    Award Plaintiff such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

DATED this 27th day of January, 2014.

Respectfully submitted,


 s/ Yvette D. Everhart
Cynthia N. Sass, Esquire
Florida Bar No. 0691320
Yvette D. Everhart, Esquire
Florida Bar No. 36960
Law Offices of Cynthia N. Sass, P.A.
601 West Dr. Martin Luther King, Jr. Blvd
Tampa, Florida 33603
Telephone: (813) 251-5599
Facsimile: (813) 259-9797
E-mail:  csass@sasslawfirm.com
       yeverhart@sasslawfirm.com
Attorneys for Plaintiff