UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

**E. VALERIE SMITH,**

    Plaintiff,

    vs.                                              Case No. 2:14-cv-50-FtM-29DNF

**FLORIDA GULF COAST UNIVERSITY
BOARD OF TRUSTEES,**

**Defendant.**
_____/

**DEFENDANTS' MOTION TO DISMISS COMPLAINT,
AND MEMORANDUM OF LAW IN SUPPORT**

      The Defendant, Florida Gulf Coast University Board of Trustees ("Defendant" or "FGCU"), hereby moves to dismiss the Amended Complaint filed by the Plaintiff, E. Valerie Smith ("Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule 12(b)(6)) and Local Rule 3.01(a), on the grounds that Plaintiff has failed to state a claim upon which relief can be granted. The basis for this Motion is more fully explained in the following memorandum of law.

**MEMORANDUM OF LAW**

**I.    Background**

      On January 28, 2014, Plaintiff filed her 9-count Complaint, alleging claims pursuant to: (1) Title VII of the Civil Rights Act of 1964, as amended, Title 42, United States Code, Section 2000e-2000e-17 ("Title VII"), for discrimination based on race (Dkt. No. 1, ¶¶ 61-72); (2) Title VII discrimination based on national origin (Dkt. No. 1, ¶¶ 73-85); (3) Title VII discrimination based on sex (Dkt. No. 1, ¶¶ 86-97); (4) the Florida Civil Rights Act, Ch. 760, Fla. Stat.

("FCRA") for race discrimination (Dkt. No. 1, ¶¶ 98-109); (5) the FCRA for national origin discrimination (Dkt. No. 1, ¶¶ 110-122); (6) the FCRA for sex discrimination (Dkt. No. 1, ¶¶ 123-134); (7) the FCRA for age discrimination (Dkt. No. 1, ¶¶ 135-146); (8) Title VII for retaliation (Dkt. No. 1, ¶¶ 147-157); and (9) the FCRA for retaliation. (Dkt. No. 1, ¶¶ 158-168).

On February 11, 2014, and prior to service of the Complaint or a responsive pleading having been filed, Plaintiff filed an Amended Complaint, reducing the total number of claims to four, dropping her state law claim for age discrimination, and dropping all state law claims under the FCRA. (Dkt. No. 8). As a result, the current Amended Complaint contains four counts, as follows: (1) Title VII for discrimination based on race (Dkt. No. 8, ¶¶ 54-65); (2) Title VII discrimination based on national origin (Dkt. No. 8, ¶¶ 66-78); (3) Title VII discrimination based on sex (Dkt. No. 8, ¶¶ 79-90); and (4) Title VII for retaliation (Dkt. No. 8, ¶¶ 91-101).

## II.     Factual Allegations[1]

Plaintiff's claims in this action arise out of her employment with FGCU. Specifically, Plaintiff alleges that she was employed as a professor with FGCU beginning in September 1996. (Dkt. No. 8, ¶ 9). Plaintiff alleges that at all times material to her claim she was the only U.S. born, African-American female faculty member and one of only two fully ranked U.S. born African-American faculty members to have worked in FGCU's College of Arts and Sciences. (Dkt. No. 8, ¶ 13). Plaintiff alleges several discrete actions by FGCU that she ultimately claims were unlawfully motivated by race, sex, and/or national origin, and were retaliatory. (Dkt. No. 8). The specific acts complained of are:

---

[1] Referenced factual allegations are drawn from the Amended Complaint, and are assumed to be true only for purposes of the instant Motion. See generally Young Apartments, Inc. v. Town of Jupiter, Fla., 529 F.3d 1027, 1037 (11th Cir. 2008).

2

1. On April 30, 2008, then-Department Chair Eric Strahorn, issued Plaintiff an unsatisfactory evaluation for academic year ("AY") 2007-2008 (Dkt. No. 8, ¶ 22).[2]

2. Plaintiff, as a result of the alleged discriminatory evaluation, was placed on probation subject to a performance improvement contract for AY 2008-2009 and denied a raise. (Dkt. No. 8, ¶24). Following the unsatisfactory rating for AY 2008-2009, Smith's office was relocated to a trailer isolated from other colleagues. (Dkt. No. 8, ¶ 25).

3. Plaintiff alleges that in the Fall of 2008, she complained to FGCU Ombudsman and EEO Liaison Charles McKinney; and in February of 2009, she complained to the Provost, Dr. Ronald Toll, and the President, Dr. Wilson G. Bradshaw. (Dkt. No. 8, ¶¶ 28, 30, 31). In each instance, Plaintiff alleges she complained about the unsatisfactory evaluation, and that in so doing, Plaintiff was complaining about, objecting to, and opposing discrimination and harassment. (Dkt. No. 8, ¶¶ 28, 30, 31).

4. Thereafter, and notwithstanding new Department Chair Joseph Cudjoe's recommendation to a Peer Review Committee that Plaintiff's probationary status be

---

[2] Plaintiff also alleges that Strahorn, after exercising what Plaintiff claimed was excessive supervision and negative treatment in course assignments, issued a negative performance evaluation for academic year (AY) 2006-2007. (Dkt. No. 8, ¶¶ 19-21). It is assumed that this is not a claimed adverse action because the evaluation was changed to "Meets Expectation" and later sections of the Amended Complaint point only to the second negative evaluation resulting in the raise denial (Dkt. No. 8, ¶ 24) as the adverse action complained of in the various counts. (Dkt. No. 8, ¶¶ 20, 21, 60.a., 73.a., and 85.a.). Moreover, if this first evaluation for AY 2006-2007 is alleged to be the basis for the discrimination claims, it should be dismissed both because it is untimely (as discussed later herein), and also because it does not rise to the level of an actionable adverse action. Collins v. Miami-Dade County, 361 F. Supp. 2d 1362, 1371 (S.D. Fla. 2005) (in absence of a tangible impact on the terms, conditions, or privileges of employment, no genuine issue of material facts exists that plaintiff suffered an adverse employment action from criticism in her performance evaluation.) Count IV (retaliation) does not even cite to any negative evaluation at all, but rather claims that the alleged retaliatory act was the failure to restore Smith to a Continuing Multi-Year Appointment, something alleged to have been done by Donna Price Henry on May 6, 2009. (Dkt. No. 8, ¶¶ 38, 96).

removed and Plaintiff returned to a Continuing Multi-Year Appointment ("CMYA"), on May 6, 2009, Donna Price Henry, the Dean of the College of Arts and Sciences, provided Plaintiff with a letter denying reinstatement to her Continuing Multi-Year Appointment (CMYA). (Dkt. No. 8, ¶¶ 8, 32, 38). Henry gave as the reason that Plaintiff's performance was unsatisfactory, and indicated that Plaintiff's contract would be non-renewed and her employment would cease as of September 8, 2010. (Dkt. No. 8, ¶ 38).[3]

5. Smith was aware of her contract not having been renewed, and indeed alleged that she complained over her "contract nonrenewal" to FGCU EEO liaison Charles McKinney. (Dkt. No. 8, ¶ 42).

6. Vice President for Academic Affairs, Ronald Toll, on September 4, 2009, reiterated to Plaintiff that her contract would not be renewed for the 2010-2011 academic year. (Dkt. No. 8, ¶ 43).

7. Plaintiff claims that FGCU treated Smith less favorably and subjected her to different terms and conditions of employment than other similarly situated Caucasian and/or foreign born, and/or male faculty members under the same or substantially the same circumstances, but does not allege any specific factual differences in treatment. (Dkt. No. 8, ¶ 45).

8. Plaintiff also claims that the actions taken by FGCU against Plaintiff were inconsistent with and more severe than actions taken against Caucasian and/or foreign born, and/or male faculty members under the same or similar and/or more egregious

---

[3] Paragraphs 34 to 37 and 39 to 42 allege various aspects of Plaintiff's disagreement with the evaluation, alleged procedural deficiencies with its administration, and action Smith took to contest the evaluation, none of which changed the fact that Henry communicated the decision of non-renewal to Plaintiff on May 6, 2009. (Dkt. No. 8, ¶¶ was 34-42).

circumstances. (Dkt. No. 8, ¶ 46). No facts are pled regarding any specific instances of less favorable treatment, different terms and conditions of employment, or inconsistent or more severe actions.

9. Plaintiff's final factual allegations are that she received a negative performance evaluation, was placed on probation and a performance improvement contract, and ultimately terminated because of race, national origin, and gender (sex) in violation of federal law. (Dkt. No. 8, ¶ 47).

10. Plaintiff also specifically alleges the filing of the charge of discrimination, claiming as to her claims of race and sex discrimination, that Plaintiff filed a verified charge of discrimination with the EEOC on or about June 30, 2010, which she alleged was within the requisite 300 days of the adverse employment action. (Dkt. No. 8, ¶¶ 55.a, 80.a).

11. With respect to Plaintiff's allegation of national origin discrimination, Plaintiff alleges that she filed a verified charge of discrimination with the EEOC on or about June 30, 2010, but goes on to clarify that Plaintiff's national origin discrimination claim "is encompassed in Plaintiff's EEOC charge of discrimination, is like or related to the allegations contained in said charge and/or grew out of such allegations during the pendency of the case before the EEOC." (Dkt. No. 8, ¶¶ 67.a, 68). No facts are alleged to substantiate this allegation. A review of the only EEOC charge provided to FGCU (attached hereto as Exhibit A)[4] itself reveals that no reference to national origin.[5]

---

[4] While accepting as true for purposes of this Motion that Plaintiff filed her EEOC charge on June 30, 2010, FGCU attaches hereto Plaintiff's Amended Charge, dated 7/8/10, as this is the only charge ever provided to Defendant. The charge is immaterial as to the overall lack of

12. Each of Plaintiff's discrimination claims (race, national origin, and sex) are alleged to have been "disparate treatment" claims based upon the protected bases alleged in the Amended Complaint. (Dkt. No. 8, ¶¶ 62, 75, 87).

13. Plaintiff further alleges that she was retaliated against having subjected to, and/or opposed discriminatory actions. (Dkt. No. 8, ¶¶ 30, 31, 95, 97).

14. The latest (and last) alleged act of discrimination and retaliation on which the entire suit is based is that Plaintiff's appointment with Defendant as a faculty member was non-renewed, a fact she was admittedly apprised of on May 6, 2009. (Dkt. No. 8, ¶¶ 38, 60.c, 73.c, 85.c, 96).

The above facts form the basis of Defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted.

## III.   Legal Argument

### A.  Rule 12(b)(6) Standard

Rule 12(b)(6) allows a party to raise a defense based on "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs."  Edwards v. Prime, Inc., 602 F.3d

---

timeliness of this suit, as set forth in Section III.B. herein, because that argument relies on Plaintiff's own Amended Complaint.  Insofar as the charge scope issues argued in Section III.C., the amended charge is submitted on the assumption that Plaintiff would only have expanded her allegations by amendment, not reduced them, and so it is logical to assume national origin was not mentioned in either charge.  If indeed national origin had been included and then dropped by amendment, then that fact would only serve to further support dismissal because it would evidence an intent to abandon the claim before investigation.  Regardless, FGCU has a Freedom of Information Act request pending with the EEOC, and will address this issue as and if needed once a response is received.

[5] As will be explained later herein, an EEOC charge is the type of document that can be considered by this Court on a motion to dismiss.

1276, 1291 (11th Cir. 2010) (citing Rivell v. Private Health Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir. 2008)). However, it is not required to accept as true bare assertions or legal conclusions. See Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009). Thus, a complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Likewise, "threadbare recitals" of the elements of a cause of action, supported only by conclusory statements or bare assertions, will not withstand a Rule 12(b)(6) motion. See Iqbal, 129 S.Ct. at 1949-50; APR Energy, LLC v. Pakistan Power Res., LLC, 653 F. Supp. 2d 1227, 1231 (M.D. Fla. 2009). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" Id. (quoting Rivell, 520 F.3d at 1309). In order to surpass that threshold, the factual allegations in the complaint must support "'a claim for relief that is plausible on its face.'" Id. (quoting Sinaltrainal, 578 F.3d at 1260).

### B. Plaintiff's Claims Are Time-Barred

Defendant moves to dismiss Plaintiff's Amended Complaint in its entirety because, on the face of the Amended Complaint, it is plain that a timely charge was not filed as to the adverse actions complained of in the lawsuit. More specifically, for a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act. See 42 U.S.C. § 2000e-5(e)(1); see also, E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002)(explaining that that to be timely in a deferral state such as Florida, a charge of discrimination must be filed within 300 days of the last discriminatory act). Thus, only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable. Id.

The continuing violation doctrine would permit a plaintiff to sue on an otherwise time-

barred claim where at least one other violation occurred within the statutory period. Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1221 (11th Cir. 2001). However, the doctrine does not apply to discrete acts of discrimination, such as a promotion denial or refusal to hire. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)(noting that each instance of failure to promote or refusal to hire is a discrete act of discrimination that constitutes a "separate actionable unlawful employment practice")(quotation omitted).[6] Plaintiff's lawsuit simply alleges several discrete acts (negative evaluation, probation with performance improvement contract, raise denial, and then contract non-renewal, with Plaintiff equates to termination since she alleges her employment will cease as a result), all of which are time-barred. As explained in Jordon v. City of Montgomery:

> "[D]iscrete discriminatory acts are not actionable if time barred." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002). Termination of employment is a discrete adverse employment act. Id. at 114, 122 S.Ct. at 2073. The clock for the 180-day filing period starts when the discrete unlawful practice takes place. See Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, ----, 127 S.Ct. 2162, 2169, 167 L.Ed.2d 982 (2007). In the case of termination from employment, the filing period "begins to run from a final decision to terminate the employee." Wright v. AmSouth Bancorporation, 320 F.3d 1198, 1201 (11th Cir.2003) (quotation omitted). *Accordingly, the limitations period commences on the date the employee receives unequivocal notice of termination.* Id. (citation omitted). An employee's pursuit of an internal appeal, "or some other method of collateral review of an employment decision, does not toll the running of the limitations period[ ]." Del. State College v. Ricks, 449 U.S. 250, 261, 101 S.Ct. 498, 506, 66 L.Ed.2d 431 (1980).

283 F. App'x 766, 767-768 (11th Cir. 2008)(italics added); see also Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 970 (11th Cir. 2008)(holding that hiring decisions, light work assignments and claimed acts of alleged retaliation were discrete acts); Tarmas v. Secretary of

---

[6] Plaintiff did not even check the "Continuing Action" box on her EEOC charge or allege a continuing violation in her EEOC charge. (Exhibit A).

the Navy, 433 F. App'x 754, 760 (11th Cir. 2011)(treating transfer denial as discrete act). Thus, "[f]or disparate treatment claims – and others for which discriminatory intent is required – the plaintiff must demonstrate deliberate discrimination within the limitations period." Lewis v. City of Chicago, 506 U.S. 205, 214-215 (2010)(additional citations omitted).[7]

In this case, Plaintiff's facts as alleged plainly demonstrate that each of the discrete acts complained of fell outside the 300-day requirement; therefore, dismissal is warranted. Plaintiff's charge of discrimination was filed June 30, 2010, 421 days after Henry gave Plaintiff written notice of non-renewal on May 6, 2009. (Exhibit A; Dkt. No. 8, ¶¶ 38, 55.a, 67, 68, 80.a, 92.a). Plaintiff thus knew, and alleges, that her employment would end as of September 8, 2010. (Dkt. No. 8, ¶ 38). It does not matter that Ronald Toll provided a second notice on September 4, 2009, or even that the actual conclusion of Plaintiff's employment was not until September 2010. (Dkt. No. 8, ¶¶ 38, 43, 44). Like the plaintiff in Delaware State College v. Ricks, 449 U.S. 257 (1980), the fact of a terminal year being granted in the context of a faculty separation does not extend the time for filing a charge of discrimination. "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." Id. at 504 (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558). Although Ricks involved a terminal year following tenure denial while FGCU in this case gave a terminal year following notice of non-renewal, the principle is the same, namely that *the discrimination alleged to have occurred happened when the adverse decision was made and communicated, not when the effects were felt*. As explained in Ricks:

---

[7] Alternatively, a court may equitably toll a limitations period, but the burden is on the plaintiff to establish that tolling is warranted. Bost v. Fed. Express Corp., 372 F.3d 1233, 1242 (11th Cir.2004). Equitable tolling "is an extraordinary remedy which should be extended only sparingly," and is inappropriate when a plaintiff did not file an action promptly or failed to act with due diligence. Id. (quotation omitted).

9

> In sum, the only alleged discrimination occurred – and the filing limitations period therefore commenced at the time the tenure decision was made and communicated to Ricks. That is so even though one of the *effects* of the denial of tenure – the eventual loss of a teaching position – did not occur until later. The Court of Appeals for the Ninth Circuit correctly held, in a similar tenure case, that "[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time of which the *consequences* of the acts become most painful." Abramson v. University of Hawaii, 594 F. 2d 202, 209 (1979) (emphasis added); see United Air Lines, Inc. v. Evans, 431 U.S. at 558, 97 S.Ct., at 1889. It is simply insufficient for Ricks to allege that his termination "gives present effect to the past illegal act and therefore perpetuated the consequences of forbidden discrimination. Id. at 557, 97 S.Ct. at 1888. The emphasis is not upon the effects of earlier employment decision; rather, it "is [upon] whether any present *violation* exists. Id. at 558, 97 S. Ct. at 1889 (emphasis in original).

Id. at 504 (emphasis in original, footnote omitted); see also, Collins v. Miami-Dade County, 361 F.Supp.2d 1362, 1378-1379 (S.D. Fla. 2005) and cases cited therein (applicable limitations period begins to run when notice of action given, and not on the date when it takes effect); McWilliams v. Escambia County School Bd., 658 F.2d 326, 328 (5th Cir. 1981)(limitations period begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred).

As stated previously, Title VII requires that a plaintiff exhaust certain administrative remedies, which begins by filing a timely charge of discrimination with the EEOC, before filing a suit for employment discrimination. See 42 U.S.C. §§ 2000e–5. For a charge to be timely in a deferral state like Florida, it must be filed within 300 days of the last discriminatory act. Here, all of Plaintiff's claims are time-barred based on the discrete acts of negative evaluation placement on probation and notice of non-renewal (termination). Because Plaintiff filed her EEOC charge on June 30, 2010, any discriminatory act she complained of must have occurred within 300 days, or on or after September 4, 2009, to be timely. Joe's Stone Crabs, 296 F.3d at 1271.

No doubt Plaintiff hopes to rely on Toll's notice of non-reappointment dated September

10

4, 2009, as the adverse action on which her claim is based. Using that date puts Plaintiff exactly at the 300-day mark. But such an argument cannot stand in the face of Plaintiff's own admission that she had already been given notice she would not be offered a contract beyond the 2009-2010 academic year (Dkt. No. 8, ¶ 38), and also that she understood that decision as having been notice of no contract renewal because she went on to complain about same. (Dkt. No. 8, ¶ 42). Of course, complaints or grievances do not serve to extend the deadline. See Ricks, 449 U.S. at 261 (1980)(An employee's pursuit of an internal appeal, "or some other method of collateral review of an employment decision, does not toll the running of the limitations period[ ]."). As demonstrated above, the time limits run from the date notice of the action was given, not when the effects were felt.

Thus, based on Plaintiff's own allegations, and with the last alleged discriminatory act being Plaintiff's notice that she would not be renewed, something Plaintiff herself admits first occurred on May 6, 2009, Plaintiff needed to have filed her charge within 300 days of that date (March 1, 2010), not June 30 as she has alleged. For this reason, Plaintiff's complaint should be dismissed in its entirety.

Even if this Court were to somehow construe Plaintiff's notice of non-renewal as having occurred with Toll's memo dated September 4, 2009 (Dkt. No. 8, ¶ 43), so as to find the claims over that specific decision of non-renewal timely, dismissal of the remaining discrete claims is still appropriate. Each of the other alleged adverse actions complained of,[8] each of those discrete acts occurred well before the notice of non-renewal, and thus cannot serve as a basis for liability.

---

[8] This includes the miscellaneous supervisory acts by Strahorn, including the negative evaluations in AY 2007-2008 and 2008-2009 (Dkt. No. 8, ¶¶ 19, 20, 22, 25), the placing of Plaintiff on probation with a performance improvement contract and a raise denial, and even Henry's unsatisfactory rating and non-renewal decision on May 6, 2009. (Dkt. No. 8, ¶¶ 24, 38)).

Morgan, 536 U.S. at 113 (2002)("[D]iscrete discriminatory acts are not actionable if time barred."). Therefore, any claims for liability based on those discrete acts pre-dating the Toll notice must be dismissed.

>  C. **Plaintiff's Claim for National Origin Discrimination is Barred Due to Plaintiff's Having Failed to File a Charge of Discrimination on That Basis**

Even if this Court were to somehow allow Plaintiff's claims, or some portion thereof, to proceed, Plaintiff's national origin claim should not advance based on a review of Plaintiff's EEOC charge. While ordinarily a court's analysis is restricted to the four corners of the complaint, see generally St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002), for certain causes of action, including discrimination claims involving EEOC charges, the court may consider documents which are attached to the Complaint or incorporated by reference, or which otherwise are authentic and integral to the plaintiff's claims. See, e.g., Chesnut v. Ethan Allen Retail, Inc., ___ F. Supp. 2d ___, 2013 WL 5290123, *3 (N.D.Ga. 2013). As was explained in Chesnut, "[t]ypically, "[w]hen a court considers matters outside of the pleadings in a [Rule] 12(b)(6) motion to dismiss, the court converts that motion into a motion for summary judgment." Id. at 83 citing Johnson v. Unique Vacations, Inc., 498 F. App'x 892, 894 (11th Cir.2012); see also Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267 (11th Cir. 2002) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion."). But as the court further explained, "conversion is not always required. In ruling on a motion to dismiss, the district court may consider an extrinsic document if (1) it is central to the plaintiff's claim, and (2) its authenticity is not challenged." Id. at *3 (citing Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010)). Further, "a document

12

central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute." Id. at *3 (citing Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir. 1999)).  On this basis, the court allowed consideration of the plaintiff's charge and intake questionnaire in Chesnut, explaining:

> In discrimination cases, the EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it was not attached to a pleading. See Sessom v. Wellstar Hosp., 1:08–cv–2057–TWT, 2009 WL 1562876, *3 n. 1 (N.D.Ga. May 29, 2009) ("The EEOC charge is properly considered on the motion to dismiss because Plaintiff has not disputed its authenticity and refers to it in her Complaint."); Judkins v. Saint Joseph's Coll. of Me., 483 F.Supp.2d 60, 62 (D.Me.2007) ("EEOC documents are central to Plaintiff's claims of sex and age discrimination."); Secrist v. Burns Int'l Sec. Servs., 926 F.Supp. 823, 825 (E.D.Wis.1996) (examining EEOC charge when determining motion to dismiss).
>
> Id. at 83.

A review of the charge in this case[9] plainly reveals no basis upon which to suggest that an alleged motivating factor was national origin. See Exhibit A.  To the contrary, the charge is quite specific, alleging race, sex, age and retaliation only.  Id.  While Plaintiff in her Amended Complaint makes a conclusory allegation that her claim of national origin was "like or related to the allegations contained in said charge and/or grew out of such allegations during the pendency of the case before the EEOC" (Dkt. No. 8, ¶ 68), no facts are pled to substantiate that conclusion and the charge itself (Exhibit A) gives no indication national origin was even suspected as a reason.

This fact is significant because the underlying basis for administrative exhaustion in the context of discrimination litigation is "to that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining

---

[9] See footnote 4, herein, for an explanation of the relevance and lack of significance of having only the amended charge dated 7/8/10 available for review at this time.

voluntary compliance and promoting conciliation efforts." See Gregory v. Georgia Dep't of Human Resources, 355 F.3d 1277, 1279 (11th Cir.2004)(per curiam)(additional citations omitted).  It is true that [c]ourts are "extremely reluctant" to bar Title VII claims on procedural technicalities" and that courts "will allow judicial claims that "amplify, clarify, or more clearly focus" the EEOC complaint allegations." Hillemann v. University of Central Florida, 167 F. App'x 747, 749 (11th Cir. 2006).  Nonetheless, "[a] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. at 749 citing Gregory, 355 F. 3d at 1280.  A plaintiff is not permitted to raise allegations of any new acts of discrimination in judicial proceedings. Id. at 749 citing Wu v. Thomas, 863 F. 2d at 1543, 1547 (11th Cir. 1989).  As a result, and as explained in Butler v. Cleburne County Commission, 2012 WL 2357740 (N.D.Ala. 2012), "a judicial claim may be barred for want of administrative exhaustion where the claim is founded upon on allegations of new acts of discrimination not presented in an EEOC charge." Id. at *13 citing Gregory v. Georgia Dep't of Human Resources, 355 F.3d 1277, 1279-80 (11th Cir.2004)(per curiam); Wu v. Thomas, 863 F.2d 1543, 1547-48 (11th Cir.1989).

      In this case, it cannot be said that Plaintiff's claim of national origin discrimination based on her U.S. born status is at all like or related to her claims that the motivating factors for the alleged adverse action of termination was race, sex, retaliation, or the now abandoned age claim. Instructive in this regard is the Eleventh Circuit's decision in Chandra v. Englehard/ICC, 234 F.3d 1219, 1225 (11th Cir.2000), a case in which plaintiff sought to bring retaliation claims based upon national origin even though he had failed to make any reference to national origin in his filings with the EEOC.  In finding that Chandra failed to meet the initial jurisdictional requirement for his retaliation claim based on national origin, the Eleventh Circuit court

concluded that, because "[n]othing in [the plaintiff's] EEOC filing mentions discrimination based on national origin, any complaint about such discrimination, or a claim under Title VII," "a reasonable investigation based on the EEOC charged did not and would not encompass retaliation based on complaints about national origin discrimination." Id. at 1225. See also, Thomas v. Miami Dade Public Health Trust, 369 F. App'x 19, 22 (11th Cir.2010)(plaintiff failed to exhaust claims alleging that she was not promoted because of race and sex where EEOC charge alleged that failure to promote was result of unlawful retaliation); Enwonwu v. Fulton–Dekalb Hosp. Auth., 286 F. App'x 586, 600 (11th Cir.2008)(Title VII charges based on race and national origin reasonably could not be expected to grow out of charge alleging only disability discrimination); Hillemann v. University of Central Florida, 167 F. App'x 747, 749 (11th Cir.2006)(plaintiff's claims over denial of three marketing positions because of race and gender discrimination and retaliation barred where EEOC charge about those positions alleged only age discrimination); Powers v. Avondale Baptist Church, 2007 WL 2310782 (M.D. Fla. 2007)(granting motion to dismiss disability claim where only race discrimination alleged in charge). Cf., Hoffman v. Boeing, 596 F.2d 683, 686 (5th Cir.1979)(federal employee plaintiff's exhaustion of administrative remedies relative to ADEA age-discrimination claim did not satisfy exhaustion requirements for Title VII race discrimination claim). In this case, Plaintiff seeks to bring a whole new theory of discrimination to bear, with nothing in the charge even remotely suggestion a national origin bias. For these reasons, the national origin claim should be dismissed.

**IV. Conclusion**

WHEREFOE, based upon the above, Defendant asks this court to dismiss Plaintiff's Amended complaint in its entirety on the basis that Plaintiff cannot show that she filed a timely

EEOC charge regarding the discrete acts of discrimination complained of in this action. Alternatively, Plaintiff's claim for national origin discrimination should be dismissed based upon a failure to exhaust administrative remedies.

DATED this 31st day of March, 2014.

    Respectfully submitted,

    /s/ Deborah C. Brown
    DEBORAH C. BROWN
    Florida Bar No.: 749648
    JEFFERY L. PATENAUDE
    Florida Bar No. 0070215
    Thompson, Sizemore, Gonzalez,
     & Hearing, P.A.
    One Tampa City Center
    201 North Franklin Street, Suite 1600
    Tampa, Florida 33602
    Telephone: (813) 273-0050
    Facsimile: (813) 273-0072
    dbrown@tsghlaw.com
    jpatenaude@tsghlaw.com
    Attorneys for the Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing this 31st day of March, 2014 to the following:

Cynthia N. Sass and Yvette D. Everhart,
Law Offices of Cynthia N. Sass, P.A.
601 West Dr. Martin Luther King, Jr. Blvd
Tampa, Florida 33603

    /s/ Deborah C. Brown
    Attorney