UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

E. VALERIE SMITH,

      Plaintiff,

v.                    Case No: 2:14-cv-50-FtM-29DNF

FLORIDA       GULF       COAST
UNIVERSITY      BOARD      OF
TRUSTEES,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendant's Motion to Dismiss Complaint (Doc. #14) filed on March 31, 2014. Plaintiff filed an Opposition to Defendant's Motion to Dismiss Complaint (Doc. #17) on April 14, 2014. For the reasons set forth below, the motion is granted in part and denied in part.

### I.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief

above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012)(internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## II.

Accepting all the factual allegations in the Amended Complaint (Doc. #8) as true, plaintiff E. Valerie Smith (plaintiff

or Smith) is an African-American female and founding faculty member of Florida Gulf Coast University (FGCU), a state university.  At the time of her hire as a professor in September 1996, plaintiff had over 20 years of teaching experience, and is qualified to teach Sociology.  Plaintiff is the only African-American female faculty member, and one of only two African-American members of the College of Arts and Sciences faculty at FGCU, which encompasses plaintiff's Department of Social and Behavioral Sciences (Department). Plaintiff was on a Continuing Multi-Year Appointment (CMYA), which is a three-year employment contract with automatic renewal contingent on performance.

In and around 2005, Eric Strahorn, a Caucasian male, became the Chair of plaintiff's Department and her supervisor, although lower-ranked and less senior at FGCU.  Prior to Strahorn becoming the Department Chair, plaintiff consistently received excellent evaluations.  After Strahorn became Department Chair, plaintiff was treated differently.  Plaintiff's upper-level courses were cancelled in favor of less-senior faculty members teaching the courses, evaluation criteria changed, and her courses were given to Caucasian and/or foreign born faculty members.

For the 2006-2007 academic year, plaintiff was issued a "Does Not Meet Expectations" performance evaluation because she failed to meet certain administrative criteria.  Plaintiff appealed the evaluation to the then Provost and it was changed to reflect "Meets

3

Expectations". For the 2007-2008 academic year, on April 30, 2008, Strahorn issued plaintiff another unsatisfactory evaluation based on administrative criteria. As a result, and pursuant to the FGCU College of Arts and Sciences Performance Evaluation Criteria and Process, plaintiff was placed on probation subject to a Performance Improvement Contract for the 2008-2009 academic year, and denied a raise.

For the 2008-2009 academic year, FGCU moved plaintiff from her office of 11 years to a trailer isolated from her colleagues of equal rank. Plaintiff was the only full professor working out of a trailer. In the Fall of 2008, plaintiff contacted FGCU'S Ombudsman and the EEO liaison to object to the discrimination and harassment. In February 2009, plaintiff sent the Provost and Vice President of Academic Affairs a memorandum complaining about the unsatisfactory evaluation rating, and objecting to the discrimination and harassment. Plaintiff also complained verbally and in writing to the President of FGCU.

A new Department Chair, a Ghanaian male, recommended to the Peer Review Committee that plaintiff's probationary status be removed and plaintiff be returned to a CMYA. On April 20, 2009, the Peer Review Committee sent a letter to the Dean of College of Arts and Sciences recommending reinstatement. Under the FGCU collective bargaining agreement, the Dean must then submit a report to the Provost and Vice President of Academic Affairs justifying

the decision, or submit a dissenting report.  The final decision rests with the Provost and Vice President of Academic Affairs.

On May 6, 2009, the Dean provided plaintiff with a letter denying reinstatement, claiming that her performance was unsatisfactory, and indicating that her contract would not be renewed.  At this time, the Dean did not submit a dissenting report.  On May 22, 2009, the dissenting report was submitted to the Provost and Vice President of Academic Affairs.  On August 7, 2009, plaintiff complained to FGCU's EEO liaison.  On September 4, 2009, the Provost and Vice President of Academic Affairs sent plaintiff a memorandum stating that her performance for the 2008-2009 academic year was unsatisfactory, she would continue on probation, and that her contract would not be renewed for the 2010-2011 academic year.  Plaintiff's employment would and did end as of September 8, 2010.

On or about June 30, 2010, plaintiff filed her Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC), and received her right to sue letter on or about October 31, 2013.  Plaintiff filed her Complaint against the FCGU Board of Trustees (FCGU Board) on January 28, 2014.  In the Amended Complaint (Doc. #8), plaintiff alleges Title VII claims of disparate treatment based on her race (Count I), national origin (Count II), and gender (Count III), as well as retaliation (Count IV).

**III.**

Defendant seeks to dismiss the Complaint in its entirety for failure to state a claim because a timely charge of discrimination was not filed with the EEOC.  If found timely, defendant seeks dismissal of Count II because national origin discrimination was not included in or encompassed by the EEOC charge of discrimination, and therefore plaintiff failed to exhaust the claim.

**A.  Timeliness of EEOC Charge of Discrimination**

Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1, *et seq.*, a plaintiff must exhaust her administrative remedies before filing suit for employment discrimination.  See Lewis v. City of Chicago, Ill., 560 U.S. 205, 210 (2010) ("Before beginning a Title VII suit, a plaintiff must first file a timely EEOC charge.").  In a deferral state such as Florida, this requires the filing of a charge of discrimination with the EEOC within three hundred days after "the alleged unlawful employment practice occurred".  42 U.S.C. § 2000e-5(e)(1); EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (2002).  Thus, plaintiff had to file her charge of discrimination within 300 days of "the date of the [discriminatory] act or lose the ability to recover for it." AMTRAK v. Morgan, 536 U.S. 101, 110 (2002).  "Determining whether a plaintiff's charge is timely thus requires identify[ing] precisely the 'unlawful employment practice' of which [s]he

complains." <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 257 (1980)(internal quotation marks omitted).

Unlawful employment practices include discharging an individual or discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1). A discrete discriminatory act is not actionable if time barred, but each "discrete discriminatory act starts a new clock" for filing charges within the 300 day time period. <u>Morgan</u>, 536 U.S. 101 at 113. A one-time discriminatory act will not extend the limitations period, <u>Joe's Stone Crabs, Inc.</u>, 296 F.3d at 1271, but an identified discriminatory act occurring within the limitations period that is a continuing violation of, or that occurs at the time of actual termination from employment, may extend the time period to start the clock to file a charge of discrimination, <u>Delaware State Coll. v. Ricks</u>, 449 U.S. 250, 257 (1980). "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." <u>Id.</u> at 257 (citing <u>United Air Lines, Inc. v. Evans</u>, 431 U.S. 553, 558 (1977)). The limitations period is not a jurisdiction prerequisite to filing and therefore courts may apply tolling or estoppel principles, albeit sparingly. <u>Morgan</u>, 536 U.S. at 113. "[T]he pendency of a grievance, or some other method of collateral review

of an employment decision, does not toll the running of the limitations periods." <u>Ricks</u>, 449 U.S. at 261 (citing <u>Elec. Workers v. Robbins & Myers, Inc.</u>, 429 U.S. 229 (1976)).

The Amended Complaint identifies three allegedly unlawful employment practices of which plaintiff complains.  In the first three claims (Counts I through III), plaintiff asserts that she suffered an adverse action when: (1) she was issued a negative performance rating resulting in the denial of a raise; (2) she was placed on probation and a performance improvement contract; and (3) her CMYA was not renewed, resulting in the termination of her employment.  (Doc. #8, ¶¶ 60a-c; 73a-c, 85a-c.)  The only specifically identified adverse action in the fourth claim (Count IV) relates to the non-renewal of her CMYA resulting in termination of her employment.  (<u>Id.</u>, ¶ 96.)

Plaintiff filed her charge of discrimination on June 30, 2010, therefore discriminatory acts prior to September 3, 2009, would be outside the scope of this action.  The three claims based upon a negative performance rating resulting in a denial of a raise and being placed on probation and a performance improvement contract are all time barred.  The discriminatory acts are alleged to have taken place on or about April 30, 2008, and plaintiff did not file an EEOC charge until June 30, 2010.  Since this is far beyond the 300 day time period, plaintiff may not proceed on this portion of

her claims.  The motion to dismiss this portion of the three claim is granted.

The three claims based upon the termination of her employment require a little more discussion.  Defendant argues that May 6, 2009 -- the date that the Dean provided written notice of non-renewal to plaintiff -- is the triggering date, and plaintiff's charge of discrimination was not filed within 300 days of this date. (Doc. #14, p. 9.)  Plaintiff argues that the discriminatory act did not occur until September 4, 2009, the date the final notice of non-renewal was issued by the Provost and Vice President, and this was within the 300 day period.

The Amended Complaint states that under the collective bargaining agreement, the final decision was to be made by the Provost and Vice President.  The Provost and Vice President did not send plaintiff a memorandum indicating that she would not be renewed until September 4, 2009.  (Doc. #8, ¶¶ 33-43.)  At this stage of the proceedings and taking these allegations as true, the Court finds that the limitation period did not commence until September 4, 2009; the decision by the Dean for non-renewal was not a final decision under the allegations of the Amended Complaint.  The motion to dismiss will be denied as to the termination of employment.

**B. National Origin Claim**

Count II, alleging national origin discrimination, is a "reverse discrimination" claim in which a member of the majority group (U.S. born persons) claims her employment was terminated because she was U.S. born.  Defendant argues that this count must be dismissed because the amended EEOC charge of discrimination[1] reveals no reference to national origin.  Plaintiff admits that the national origin box was not checked, but argues that the claim grows out of the same allegations and therefore the EEOC charge is sufficient to support the count.  In support, plaintiff attached her intake questionnaire, which references preferential treatment provided to a French born professor.  (Doc. #17, p. 10.)  The intake questionnaire is not central to or referenced in the Amended Complaint, and the Court is not inclined to convert the motion to dismiss to a motion for summary judgment.  La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).  Therefore, the document will not be considered.

Title VII of the Civil Rights Act of 1964 makes it unlawful to discharge an individual, or to discriminate against the individual, "with respect to his compensation, terms, conditions,

---

[1] Defendant accepts that plaintiff filed a charge on June 30, 2010, however only a July 8, 2010 Amended Charge was ever provided to defendant, and is therefore the document relief upon in the Motion to Dismiss.  (Doc. #14, n.4.)  Neither charge was attached or filed with the Amended Complaint.

or privileges of employment" based on the individual's national origin.  42 U.S.C. § 2000e-2(a)(1).  See also Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).  "The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."  Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88 (1973).  "Thus, national origin discrimination as defined in Title VII encompasses discrimination based on one's ancestry, but not discrimination based on citizenship or immigration status."  Cortezano v. Salin Bank & Trust Co., 680 F.3d 936, 940 (7th Cir. 2012).  Post-Espinoza, it is "an unfair immigration-related employment practice" to discriminate against an individual if they are a "protected individual" such as a citizen or national of the United States.  8 U.S.C. § 1324b(a)(3)(A)(1996).

"A Title VII action, however, may be based 'not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."  Chanda v. Engelhard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000) (citations omitted).

Setting aside the allegations contained in the intake questionnaire, and having no charge of discrimination to contradict the Amended Complaint or provide additional guidance,

the factual allegations in the Amended Complaint are sufficient at this stage of the proceedings.  As relevant here, the Amended Complaint alleges that plaintiff met all conditions precedent and exhausted all administrative remedies.  Plaintiff further alleges that she filed a timely charge and that her "national origin discrimination claim is encompassed" in the charge and is "like or related to the allegations contained in said charge and/or grew out of such allegations during the pendency of the case before the EEOC."  (Doc. #8, ¶¶ 67-68.)  Plaintiff alleges that upper level courses taught by her were given to "foreign born and/or male faculty" members; that she was treated less favorably than "other similarly situated Caucasian and/or foreign born and/or male faculty members"; and that she is a United States citizen and therefore a member of a protected class.  (Id., ¶¶ 19d, 45, 71.) The motion to dismiss will be denied as to the national origin claim.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss Complaint (Doc. #14) is **GRANTED** as to those portions of Counts I, II and III relating to the negative performance rating resulting in a denial of a raise and

placement on probation and a performance improvement contract, and is otherwise **DENIED.**

    **DONE AND ORDERED** at Fort Myers, Florida, this ___23rd___ day of December, 2014.

                                                      JOHN E. STEELE
                                                      UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record